IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARNELL JARMANE PERKINS,  )
AIS # 233410,  )
 )
Plaintiff,  )
 )
v.  )  CASE NO. 2:25-CV-188-WKW
 )  [WO]
JOHN Q. HAMM, *et al.*,  )
 )
Defendants.  )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Darnell Jarmane Perkins, a state inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action against multiple Defendants "in their personal and official capacities"—John Q. Hamm, Commissioner of the Alabama Department of Corrections (ADOC); Deborah Crook, Deputy Commissioner of Health Services for the ADOC; Wexford Health Sources, Inc.[1]; Sgt. Robinson; Officer Chaney; and Fictitious Parties A–F.  (Doc. # 1 at 1, 2.)  Plaintiff alleges that Defendants have shown deliberate indifference to his health and safety and that Defendants failed to

---

[1] Plaintiff originally named CHS AL, LLC d/b/a YesCare as a Defendant.  However, it has since been determined that Wexford Health Sources, Inc. was the healthcare entity that was contracting with the ADOC to provide healthcare services to inmates at the time alleged by Plaintiff.  (*See* Doc. # 38.)  Throughout this opinion, Wexford has been substituted for YesCare as needed.

protect Plaintiff from assault and injuries by another inmate while knowing of dangerous prison conditions.  (Doc. # 1 at 2–3.)

In response to Plaintiff's complaint, Commissioner Hamm filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted (Doc. # 16), along with a brief in support (Doc. # 17).  Thereafter, Plaintiff filed a "motion in opposition" to Commissioner Hamm's motion to dismiss (Doc. # 32) and a brief in support (Doc. # 33).  Plaintiff's "motion in opposition" is construed as a response in opposition to Hamm's motion to dismiss.

For the reasons to follow, Commissioner Hamm's motion to dismiss (Doc. # 16) will be granted, with some claims dismissed with prejudice and some without.

## II.  STANDARDS OF REVIEW

### A.  <u>Rule 12(b)(1)</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction.  *See Neeley v. Walker*, 67 F. Supp. 3d 1319, 1321 (M.D. Ala. 2014); *Hampton v. Hamm*, 2022 WL 69214, at *1 (M.D. Ala. Jan. 6, 2022).  A Rule 12(b)(1) attack on subject matter jurisdiction can be either "facial" or "factual."  *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008).  The challenge here will be analyzed facially.  A facial attack

"requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2008) (cleaned up) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In evaluating whether the complaint "sufficiently allege[s] a basis of subject matter jurisdiction," the court employs standards similar to those governing Rule 12(b)(6) review. *Hampton*, 2022 WL 69214, at *1 (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013)).

**B.    Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Reprod. Health Servs. v. Strange*, 204 F. Supp. 3d 1300, 1309–10 (M.D. Ala. 2016) (quoting Fed. R. Civ. P. 8(a)(2)). Evaluating a Rule 12(b)(6) motion to dismiss requires the court to "accept as true the facts alleged in the complaint, drawing all reasonable inferences in [the] plaintiff's favor." *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018) (citation omitted).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The allegations should present a "plain statement possessing enough heft to show that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 557 (cleaned up).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Although the facts alleged by the plaintiff must be taken as true, mere conclusory assertions "are not entitled to the assumption of truth."  *See id.* at 679.

*Pro se* pleadings are liberally construed and held "to less stringent standards" than pleadings drafted by attorneys.  *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  However, the allegations still "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 557.  The court cannot "rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action."  *GJR Invs. v. Escambia Cnty.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by*, *Iqbal*, 556 U.S. 662.

### III. THE COMPLAINT'S ALLEGATIONS

The allegations in the complaint (Doc. # 1) and accompanying declaration (Doc. # 1-1) set forth the following.

### A.    Plaintiff's Assault

Plaintiff claims that, on March 8, 2023, at Bullock Correctional Facility, he was the victim of an unprovoked assault by a fellow inmate, Sean Carter.  Carter allegedly approached Plaintiff at approximately 8:50 p.m. and began assaulting him "because [Carter] was under the influence of some type of unauthorized drug, as was evident by his erratic behavior."  Plaintiff was attacked for "several minutes," during which he was stabbed twice in his right side and "had the flesh bitten off [his] right-hand thumb, leaving it attached only by a narrow strip of skin."  (Doc. # 1-1 at 1.)

Plaintiff alleges that there was either no officer in the dorm at the time of his assault or the assigned officer had left his or her post.  (*Id.* at 2.)  Plaintiff claims that, although a cube officer was on duty, it is unclear whether the cube officer was distracted and thus delayed reporting the assault to Sgt. Robinson and Officer Chaney, or whether Sgt. Robinson and Officer Chaney delayed their response to a report by the cube officer.  Either way, Plaintiff says that it took eight to ten minutes for Sgt. Robinson and Officer Chaney to arrive, remove Plaintiff and Carter from the dorm, and take them to the infirmary.  Plaintiff's side was bandaged, and the

"flesh [was] roughly shoved back onto the bones of [his] thumb and gauze wrapped around it."  He then was given two Tylenol and sent back to the dorm.  (*Id.*)

The next morning, Plaintiff was seen by Dr. Siddiq, who informed prison staff that Plaintiff needed to be taken to the hospital immediately.  Plaintiff alleges that over two hours passed before he was taken to the hospital and that, by the time he arrived at the hospital for proper treatment, over fifteen hours had passed.  He was told by the doctor at the hospital that it was likely his thumb would need to be amputated.  The surgeon was able to restore blood flow and reattach Plaintiff's thumb; however, he was unable to restore full functionality and sensitivity.  Plaintiff can move his thumb but has no sense of touch and no grip strength.  He not only experiences physical pain but also emotional distress, fear, and hypersensitivity to other inmates being near him.  Moreover, although Plaintiff has communicated these issues to mental health staff and corrections officers, he has received "no significant help with these problems."  (*Id.* at 3.)

Plaintiff accuses Defendants of showing deliberate indifference to his health and safety "while knowing of the dangerous conditions at the prison."  (Doc. # 1 at 2, 3.)  Plaintiff alleges that Defendants' deliberate indifference to his health and safety led to his assault, and that Defendants failed to protect Plaintiff from the assault and resulting injuries.  (*Id.* at 2–3; *see also* Doc. # 1-1 at 1.)

6

**B.**     **Claims Against Commissioner Hamm**

Plaintiff's claims against Commissioner Hamm fall into two categories: (1) claims relating to Plaintiff's alleged assault and injuries (*i.e.*, Eighth Amendment claims for deliberate indifference for failure to protect), and (2) claims relating to the alleged constitutionally inadequate medical care that Plaintiff received thereafter (*i.e.*, Eighth Amendment claims for deliberate indifference to Plaintiff's serious medical needs). This opinion focuses on the allegations and claims against Commissioner Hamm, but for context, allegations against other Defendants are included.

**1.**     ***General Allegations***

Attached to Plaintiff's complaint is a handwritten document titled "Claims Against the Defendants." (Doc. # 1 at 4–12.) Plaintiff begins with generalized deliberate-indifference allegations against "all Defendants identified as officials and or officers in the employ of the [ADOC]." (*See id.* at 4–5.) He claims that ADOC officials and officers knew or had reason to know,

> when taking the actions alleged to[] have been taken with deliberate indifference[,] that (1) the conditions of the prisons of the [ADOC], including but not limited to [Bullock Correctional Facility], were and remain unsafe and pervasively violent; (2) said conditions are the result of excessive overcrowding, extreme understaffing[,] and dangerous logistical issues within said prisons; (3) said issues have further resulted in and/or contributed to a general and dangerous attitude of deliberate indifference to the health and safety of inmates in said prisons, being displayed by the officials, correctional officers[,] and support staff . . . as well as a heightened level of stress, anxiety[,] and generalized fear

7

amongst the inmates of said prisons, including but not limited to the Plaintiff; and (4) the actions taken by them and alleged to be deliberately indifferent posed a substantial risk to the health and safety of said inmates.

(Doc. # 1 at 4.) In a declaration accompanying his complaint, Plaintiff clarifies that ADOC officials and officers "knew or had reason to know" of the conditions at Bullock Correctional Facility and other ADOC facilities because the issues of "pervasive violence, overcrowding[,] and insufficient staff" have "been made known, not only to ADOC officials, but to the general public as well, through an investigation by and lawsuits brought against the ADOC, by the United States Department of Justice (DOJ)." (Doc. # 1-1 at 1.) Plaintiff alleges that these issues, and Defendants' deliberate indifference to inmates generally, led to his unprovoked assault.

Furthermore, with respect to Defendants Hamm, Crook, and Wexford, Plaintiff alleges that these Defendants

and those employed by [Wexford] did also know that (1) YesCare Corp. is also the same entity which was previously contracted to provide medical care to the inmates in the ADOC under the names of Wexford and Corizon; (2) the entity now doing business as YesCare Corp. and previously known as Wexford and Corizon has a long history of causing and/or contributing to the constitutionally inadequate medical care, provided to inmates of the ADOC prisons, by and through its policies and customs . . . .

(Doc. # 1 at 4–5.) He claims that these "policies and customs"

(1) limit the medical intervention medical staff, specifically nurses can provide to inmates, without authorization from the facility physician;

(2) limit the medical intervention which can be provided by the facility physicians without prior authorization from the [Wexford] Corporate medical board; (3) cause delays in an inmate's ability to receive needed and often times urgent medical attention; (4) force inmates to navigate a grievance process which is intended to frustrate and ultimately defeat an inmate's ability to receive proper and timely medical care . . . .

(*Id.* at 5.) Finally, Plaintiff argues that

said [medical] entity [has] a long history of filing bankruptcy when facing multiple suits for deliberately indifferent and constitution[ally] inadequate medical care, being provided to the inmates of prisons, by the medical staff . . . which staff are retained, when the entity files bankruptcy under one business name and continues . . . as a different business.

(*Id.*)

### 2.    *Claims # 1–3:  John Q. Hamm*

Plaintiff alleges that Commissioner Hamm has acted with deliberate indifference to the health and safety of inmates under his authority for three reasons: (1) "by continuing to pursue ineffective 'corrective' measures to address overcrowding, understaffing[,] and logistical issues in the prisons under his authority," (*id.* at 6); (2) by failing to implement policies requiring corrections officers to perform routine walk-through security checks and to ensure corrections officers actually perform such checks (*id.*); and (3) by "contract[ing] with and/or allow[ing] ADOC to continue its contract with [Wexford]."  (*Id.* at 7.)  Plaintiff argues that these acts and omissions by Commissioner Hamm "cause[d] and/or

contribute[d] to inmate Sean Carter's unprovoked assault on the Plaintiff and the injuries resulting therefrom." (*Id.* at 6, 7.)

## C.    **Request for Relief**

Plaintiff requests injunctive relief in the form of a court order directing the ADOC to "require its medical service providers adjust and execute plans to provide urgent medical care at the time of need and non-urgent care w[ith]in 24 hours of request." Additionally, Plaintiff seeks $250,000 in compensatory damages and $200,000 in punitive damages. (*Id.* at 13.)

## IV.  DISCUSSION

Plaintiff brings this suit under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

§ 1983.

To state a claim under § 1983, a plaintiff must allege two elements. First, he must allege a violation of a right protected by federal laws, and second, he must allege that the violation was committed by a person acting under color of law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Beaubrun v. Dodge State Prison*, 2025 WL 2490396, at *3 (11th Cir. Aug. 29, 2025) (per curiam).

Plaintiff has sued Commissioner Hamm in his official and individual capacities, alleging that Commissioner Hamm was deliberately indifferent to Plaintiff's health and safety, and that this deliberate indifference led to Defendants' failure to protect Plaintiff from being assaulted and the injuries that resulted therefrom.   (Doc. # 1 at 1, 2.)   Plaintiff brings his claims under the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  Thus, Plaintiff's claims fall into two categories:  (1) claims relating to his alleged assault and injuries (*i.e.*, Eighth Amendment claims for deliberate indifference for failure to protect), and (2) claims relating to the alleged constitutionally inadequate medical care that he received after the alleged assault (*i.e.*, Eighth Amendment claims for deliberate indifference to Plaintiff's medical needs).

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.  (*See* Doc. # 1 at 13.)  In his motion to dismiss, Commissioner Hamm seeks dismissal of all claims against him because (1) Plaintiff fails to state Eighth Amendment deliberate-indifference claims; (2) Plaintiff fails to state a claim based on supervisory liability; (3) Hamm is entitled to qualified immunity; and (4) Hamm is entitled to Eleventh Amendment and sovereign immunities.  (Doc. # 16.)

A. **Claims Against Commissioner Hamm in His Official Capacity for Monetary Damages**

Plaintiff's claims against Commissioner Hamm in his official capacity for monetary damages are barred by the Eleventh Amendment.  The Eleventh Amendment bars citizens of a state from bringing suit against that state unless the state has expressly waived Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996).  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (per curiam) (citing *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  Eleventh Amendment immunity extends to state officials in their official capacities in cases where, for all practical purposes, "the state is the real, substantial party in interest." *Carr*, 916 F.2d at 1524 (quoting *Halderman*, 465 U.S. at 101).  "[T]he state is considered the real party in interest" when an award of damages against the named defendant would be paid by the state.  *Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1257–58 (M.D. Ala. 2007) (quoting *Carr*, 916 F.2d at 1524).

Here, Plaintiff's official-capacity claims against Commissioner Hamm for monetary damages are tantamount to claims against the State of Alabama itself and must be dismissed with prejudice.

**B.    Claims Against Commissioner Hamm in His Individual Capacity for Monetary Damages**

Plaintiff also seeks monetary damages from Commissioner Hamm in his individual capacity.  In his motion to dismiss and brief in support, Commissioner Hamm raises the defense of qualified immunity.  (*See* Doc. # 16 ¶ 4; Doc. # 17 at 21–24.)  For the reasons to follow, Plaintiff's claims against Commissioner Hamm in his individual capacity for monetary damages will be dismissed with prejudice based on qualified immunity.

**1.    *Qualified Immunity***

Qualified immunity shields government officials from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Eleventh Circuit applies a two-part test to determine whether a government official is entitled to qualified immunity.  First, "an official must establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[2]  *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir.

---

[2] "The term 'discretionary authority' covers 'all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'" *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).  Here, the parties do not dispute that Plaintiff's claims relate to the actions (or inactions) of Commissioner Hamm taken (or not taken) while performing his official duties and within the scope of his authority.  Thus, the first step of the two-part qualified-immunity test is met.

2009) (cleaned up). "Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citation omitted). In the context of a motion to dismiss on the grounds of qualified immunity, dismissal is required "when the complaint fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation and internal quotation marks omitted).

The second step of the qualified-immunity test can be broken down into two sub-steps. To overcome qualified immunity, the plaintiff must show "that '(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'" *Miller v. Palm Beach Cnty. Sheriff's Off.*, 129 F.4th 1329, 1333 (11th Cir. 2025) (quoting *Hollman ex rel. Hollman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). The order in which these sub-steps are addressed is immaterial. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1296 (11th Cir. 2025) ("Judges may decide which of the two prongs of this analysis to address first in light of the circumstances of the case at hand.").

### a.    Constitutional Violations

To overcome qualified immunity, the facts alleged by Plaintiff must "make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232. Liberally

construed, Plaintiff's complaint alleges two kinds of deliberate-indifference claims against Commissioner Hamm: (1) a failure-to-protect, deliberate-indifference claim (more specifically, an "excessive-inmate-violence" claim),[3] and (2) a claim of deliberate indifference to Plaintiff's serious medical needs. There is, however, a caveat: As Commissioner of the ADOC, Hamm is considered a supervisory official.

The standard by which supervisors are held liable in their individual capacities for their subordinates' actions is "extremely rigorous." *Stalley v. Cumbie*, 124 F.4th 1273, 1288 (11th Cir. 2024) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009)). "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *overruled in part on other grounds by*, *Pearson*, 555 U.S. 223.

---

[3] In *Barefield v. Dunn*, this court clarified that claims based on a failure-to-protect theory come in two forms: specific and general. *See* 688 F. Supp. 3d 1026, 1063–64 (M.D. Ala. 2023). A specific deliberate-indifference claim is "based on specific, or individualized, threats posed by certain inmates or groups of inmates to a specific plaintiff or class of inmates like [the] plaintiff." *Id.* at 1063. A general deliberate-indifference claim is one where the "conditions of confinement themselves generally pose[] a substantial risk of serious harm from inmate-on-inmate violence to all inmates forced to live under those conditions." *Id.* at 1064 (denoting such claims as "excessive-inmate-violence" claims). With respect to Hamm, Plaintiff appears to allege the latter.

### i.    Claim 1:  Failure to Protect Plaintiff from Excessive Inmate Violence

The Eighth Amendment's prohibition against "cruel and unusual punishments" requires that prison officials "take reasonable measures to guarantee the safety of the inmates," including but not limited to "protect[ing] prisoners from violence." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); *accord Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *see also Tullis v. Dixon*, 2025 WL 3181635, at *2 (M.D. Fla. Nov. 14, 2025) ("[T]he duty to 'take reasonable measures to guarantee the safety of the inmates' does not make prison officials 'the guarantor[s] of [inmates'] safety.'" (first quoting *Farmer*, 511 U.S. at 832; and then quoting *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005))).  To be sure, while an inmate "has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates, . . . . '[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured.'" *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (quoting *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981) ("It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials.")).

A failure-to-protect claim has three elements. *See Cox*, 15 F.4th at 1357–58. First, the plaintiff must allege that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 1358 (quoting *Farmer*, 511 U.S. at 834). Second, he must demonstrate "that the prison official had a sufficiently culpable state of mind amounting to deliberate indifference." *Id.* (cleaned up). Third, the plaintiff must show causation (*i.e.*, that the alleged constitutional violation caused his injuries). *Id.* As to the second element, to establish liability on a deliberate indifference claim, a plaintiff must demonstrate: (1) "that he suffered a deprivation that was objectively, 'sufficiently serious'"; (2) that the defendant acted with subjective recklessness as used in the criminal law—*i.e.*, "the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff"; and (3) that the defendant did not "respond[] reasonably" to a "substantial risk to inmate health or safety" about which he "actually knew." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (citations omitted).

Generally, "a plaintiff must show 'more than a generalized awareness of risk' to make out a deliberate-indifference claim." *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (per curiam) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101 (11th Cir. 2014)); *see also Wade*, 106 F.4th at 1259 ("Absent a particularized focus on a prison official's subjective awareness of the risk created by his own conduct, there is a danger that he could be held liable for conduct that

does not remotely resemble the 'inflict[ion]' of 'punishment[.]'" (alterations in original)).   To establish deliberate indifference based on an "excessive-inmate-violence" claim, the plaintiff must show "that serious inmate-on-inmate violence was the norm or something close to it." *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005).   In the prison setting, however, "a risk of harm to some degree always exists." *Id.* at 1323.   And while "confinement in a prison where violence and terror reign is actionable," occasional, isolated incidents of inmate-on-inmate violence do not equate to prison conditions constituting cruel and unusual punishment. *See id.* at 1320.

Concerning the first element of a failure-to-protect claim, Plaintiff argues that violence at Bullock Correctional Facility is "almost constant," that his March 2023 assault makes him "a victim of said pervasive violence," and that the "pervasive violence has been made known" to ADOC officials and the general public because of the DOJ's investigation and lawsuit. (Doc. # 1-1 at 1.)   Therefore, Plaintiff claims, he is incarcerated under conditions that pose a substantial risk to his health and safety.   However, these conclusory allegations are insufficient to plausibly allege the first element of a failure-to-protect claim—that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." *See Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021).

Even if it is assumed that Plaintiff has plausibly alleged that he was "incarcerated under conditions posing a substantial risk of serious harm," he has not alleged that Commissioner Hamm had a sufficiently culpable state of mind amounting to deliberate indifference. First, Plaintiff must demonstrate that he suffered an "objectively, 'sufficiently serious'" constitutional deprivation. Assuming that Plaintiff has alleged that he suffered an "objectively, 'sufficiently serious'" deprivation, he also must allege that Commissioner Hamm "was actually, subjectively aware that *his own conduct* caused a substantial risk of serious harm to [Plaintiff]." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (emphasis added). Plaintiff's claim fails at this element.

Plaintiff claims, in conclusory fashion, that ADOC officials, like Commissioner Hamm, knew or had reason to know of the "unsafe and pervasively violent" nature of ADOC facilities, including but not limited to Bullock Correctional Facility. (Doc. # 1 at 4.) To support this assertion, Plaintiff mentions generally the investigation into ADOC prisons conducted by the DOJ and a lawsuit brought against the ADOC by the DOJ. Plaintiff's vague reference to the DOJ's investigation and lawsuit shows that Commissioner Hamm may have had "a generalized awareness" of the risk of harm to Plaintiff. *See id.* at 1258. But, under Eleventh Circuit precedent, Hamm's "generalized awareness" of a potential risk to Plaintiff is not enough to plausibly allege that Hamm was "actually, subjectively

aware that his own conduct caused a substantial risk of serious harm to [Plaintiff]."[4]
*Id.*; *see also Beaubrun v. Dodge State Prison*, 2025 WL 2490396, at *4 (11th Cir. Aug. 29, 2025) (per curiam) (affirming the Rule 12(b)(6) dismissal of an Eighth Amendment failure-to-protect claim where "[the plaintiff] didn't allege that the defendant had subjective knowledge of a risk of serious harm").

Accordingly, Plaintiff has not adequately alleged that Commissioner Hamm possessed actual, subjective awareness that his conduct posed a substantial risk of serious harm to Plaintiff.

Furthermore, because Plaintiff has not alleged that Commissioner Hamm, as a supervisory official, was physically present during, or personally involved in, the alleged assault, he must show a causal connection between Hamm's actions and the alleged constitutional deprivation that he suffered. "[T]he causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003),

---

[4] *Cf. Cain v. Calloway*, 2025 WL 913453, at *2 (M.D. Ala. Mar. 25, 2025) (taking judicial notice of certain facts from a DOJ report because the plaintiff had attached the report to his complaint and the parties had referenced facts from the report in their briefing). The court in *Cain* ultimately concluded that the plaintiff had plausibly alleged that (1) the supervisory defendants were subjectively aware that their failure to address conditions at Elmore Correctional Facility would put the plaintiff at a serious risk of substantial harm from inmate-on-inmate violence and (2) the supervisory defendants did not respond reasonably to that risk. *Id.* at *8–9. Notably, with respect to the failure-to-protect claim against the supervisory defendants in *Cain*, the defendants did not argue that they were entitled to qualified immunity. *Id.* at *11 n.10.

*overruled in part on other grounds by*, *Pearson v. Callahan*, 555 U.S. 223 (2009)). However, "[p]roving that a policy . . . caused a constitutional harm would require [the plaintiff] to point to multiple incidents." *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1299 (11th Cir. 2023). When a plaintiff cannot show "a series of constitutional violations from which deliberate indifference can be inferred, [he] must show that the policy itself is unconstitutional." *Id.* (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1311 (11th Cir. 2011)). In *Myrick*, for instance, the Eleventh Circuit affirmed the district court's grant of the sheriff's motion to dismiss based on qualified immunity. It concluded that the complaint did not state a claim against the sheriff for supervisory liability because it "focuse[d] solely on [the plaintiff's] experience—a single incident of allegedly unconstitutional activity—and because none of the policies or customs it allege[d were] unconstitutional on their own." *Id.*

Plaintiff has not established the necessary causal link between Hamm's actions (or rather, inactions) and the alleged constitutional deprivation that he suffered. Plaintiff has pointed to no custom or policy on Hamm's part, and even if he had, alleging that Hamm's custom or policy caused Plaintiff to suffer a constitutional harm would require Plaintiff to allege multiple incidents. Though Plaintiff insists that Bullock Correctional Facility is a "pervasively violent" institution, the only incident alleged by Plaintiff to bolster that contention is his own incident of inmate-on-inmate violence from March 2023. Consequently, Plaintiff's

allegations against Commissioner Hamm are insufficient to make out a supervisory constitutional violation.

### ii.    Claim 2:  Deliberate Indifference to Plaintiff's Serious Medical Needs

The Eighth Amendment's prohibition of "cruel and unusual punishment" also "should be understood to prohibit government officials from exhibiting 'deliberate indifference to [the] serious medical needs of prisoners.'"  *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).  Again, "[t]o establish liability on a deliberate indifference claim, a plaintiff must demonstrate that:  (1) the injured party suffered a deprivation that was objectively 'sufficiently serious,' and (2) the defendant acted with 'subjective recklessness as used in the criminal law.'"  *Wingo v. WellStar Health Sys., Inc.*, 160 F.4th 1184, 1190 (11th Cir. 2025) (quoting *Wade*, 106 F.4th at 1262).

"To meet the second step, the plaintiff must show that the 'defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff.'"  *Id.* at 1190–91 (quoting *Wade*, 106 F.4th at 1262).  At the pleading stage, this means that Plaintiff must allege facts that plausibly show that he suffered a deprivation that was objectively sufficiently serious and that Commissioner Hamm acted with subjective recklessness as used in the criminal law. *See, e.g.*, *O'Connor v. Reddish*, 2026 WL 74569, at *3 (11th Cir. Jan. 9, 2026) (per curiam) (stating that "the deliberate-indifference standard requires that a prison

official subjectively knew that her actions placed an inmate at substantial risk of serious harm" (citing *Wade*, 106 F.4th at 1262), and therefore, "to succeed on his claim against [the defendant], [the plaintiff] must allege facts that plausibly show that [the defendant] knew that it would seriously jeopardize [the plaintiff's] health to give him a sick-call form instead of referring him for immediate care.  But the facts he asserts don't support that conclusion").

Plaintiff's claim against Commissioner Hamm for deliberate indifference to his serious medical needs fails at the first element because he has not alleged an objectively sufficiently serious deprivation.  Plaintiff says that he and Carter were removed from the dorm and taken to the infirmary for treatment and body charts approximately eight to ten minutes after the assault.  Even if not world-class medical care, Plaintiff did receive medical attention at the prison's infirmary just minutes after the assault and at a hospital the morning after the assault.  "[T]he Constitution doesn't require that the medical care provided to prisoners be 'perfect, the best obtainable, or even very good.'"  *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (citation omitted).  "Rather, medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (cleaned up).  Plaintiff has not alleged that the medical care he received following the assault rises to this standard, nor has he alleged that Commissioner Hamm was

in any way informed or involved in the medical care that Plaintiff received following the assault.

Because Plaintiff has not alleged that Commissioner Hamm was physically present during, or personally involved in, the alleged constitutionally inadequate medical care provided to Plaintiff, Plaintiff must show a causal connection between Hamm's actions and the alleged constitutional deprivation that he suffered. "[T]he causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *overruled in part on other grounds by*, *Pearson v. Callahan*, 555 U.S. 223 (2009)). However, "[p]roving that a policy . . . caused a constitutional harm would require [the plaintiff] to point to multiple incidents." *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1299 (11th Cir. 2023) (analyzing the grant of a motion to dismiss on grounds of qualified immunity at the Rule 12(b)(6) stage). When a plaintiff cannot show "a series of constitutional violations from which deliberate indifference can be inferred, [he] must show that the policy itself is unconstitutional." *Id.* (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1311 (11th Cir. 2011)).

Plaintiff cannot show a causal connection between Hamm's actions and the alleged constitutional deprivation he suffered. He simply alleges that, Hamm

"cause[d] and/or contribute[d]" to Plaintiff's assault and injuries by "contract[ing] with and/or allow[ing] the ADOC to continue its contract with [Wexford]" and related entities.  He also claims that Hamm knew or should have known that Wexford allegedly "has a long history of causing and/or contributing to the constitutionally inadequate medical care provided to the inmates of the ADOC prisons, by and through its policies and customs."  These blanket allegations do not provide a sufficient causal link between Hamm and the allegedly constitutionally inadequate medical care received by Plaintiff.  While Plaintiff alleges policies and customs on Wexford's part, he does not allege any policy or custom on Hamm's part.  Moreover, despite alleging that Wexford and its counterparts provide constitutionally inadequate medical care to inmates, Plaintiff does not point to any other incidents where inmates allegedly received constitutionally inadequate medical care.  Accordingly, Plaintiff's allegations against Commissioner Hamm are insufficient to make out a supervisory constitutional violation.

### b.    Clearly Established Right

Where a defendant raises the affirmative defense of qualified immunity at the Rule 12(b)(6) stage, "the district court must dismiss any claims that fail to allege a violation of clearly established law."  *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022) (citation omitted).  Thus, Plaintiff also must show that the right allegedly violated by Commissioner Hamm was clearly established to overcome qualified

immunity.  "To be clearly established, the contours of a right must be sufficiently clear such that every reasonable officer would have understood his conduct to violate that right." *Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1296 (11th Cir. 2025).  A plaintiff can show that a right was clearly established in one of the following three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (quoting *T.R. ex rel. Brock v. Lamar Cnty. Bd. of Educ.*, 25 F.4th 877, 883 (11th Cir. 2022)).  "At the heart of the inquiry into whether [the defendant] violated clearly established law lies this question:  'Did [he] have fair warning when [he] engaged in the conduct giving rise to the claim that the conduct was unconstitutional?'"  *Nute v. White*, 152 F.4th 1311, 1318–19 (11th Cir. 2025) (quoting *Cantu v. City of Dothan*, 974 F.3d 1217, 1233 (11th Cir. 2020)).

First, Plaintiff has not pointed to any "case law with indistinguishable facts."[5] Second, Plaintiff has not pointed to a "broad statement of principle within the

---

[5] Commissioner Hamm, on the other hand, argues that materially similar cases regarding generalized threats of violence are favorable to him and demonstrate his entitlement to qualified immunity because they tend to show that he was not on notice that his conduct violated Plaintiff's rights.  (Doc. # 17 at 24.)  In support of this proposition, Hamm cites *Marbury v. Warden* 936 F.3d 1227, 1233–35 (11th Cir. 2019), *Harrison v. Culliver*, 746 F.3d 1288, 1299–1302 (11th Cir. 2014), and *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320–24 (11th Cir. 2005).

Constitution, statute, or case law." "A qualifying broad statement cannot be too general and must put every reasonable officer on notice that it clearly prohibits the officer's conduct in the particular circumstances before him." *DeMarcus v. Univ. of S. Ala.*, 133 F.4th 1305, 1318 (11th Cir. 2025) (cleaned up). Plaintiff simply states that Defendants exhibited deliberate indifference to his health and safety, failed to protect him from being assaulted and injured in March 2023, and provided him with constitutionally inadequate medical care. These statements are too general and do not provide notice of a clear prohibition on Commissioner Hamm's alleged unconstitutional conduct.

Under the third method of showing a clearly established right, "a general constitutional rule . . . may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Gilmore*, 144 F.4th at 1258 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Put another way, the conduct alleged must be so egregious that it clearly and obviously violates a constitutional right. "[Eleventh Circuit] case law has made clear that 'obvious clarity' cases will be rare." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011). Based upon an independent review of "obvious clarity" cases,[6] the case at bar is not one of them. The allegedly unconstitutional actions

---

[6] *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730 (2002); *Taylor v. Rojas*, 592 U.S. 7 (2020) (per curiam). In *Hope*, the former-inmate plaintiff alleged that prison guards twice handcuffed him to a hitching post. *See* 536 U.S. at 733–35. The second time, the plaintiff was handcuffed to the post for a

taken by Commissioner Hamm fall far short of those alleged in "obvious clarity" cases.

### c.    Summary of Qualified Immunity Analysis

Because Plaintiff has failed to plausibly allege that Commissioner Hamm violated the Constitution or a clearly established right as to the Eighth Amendment deliberate-indifference claims, Hamm is entitled to qualified immunity. Therefore, Plaintiff's individual-capacity claims against Commissioner Hamm for monetary damages will be dismissed with prejudice.

---

seven-hour period, during which he was shirtless, given water only once or twice, and not given any bathroom breaks. *Id.* at 734–35. The district court's holding that the guards were entitled to qualified immunity was affirmed by the Eleventh Circuit, and the Supreme Court granted certiorari. *Id.* at 735–36. In reversing the lower courts' finding that the guards were entitled to qualified immunity, the Court noted, "The obvious cruelty inherent in [handcuffing inmates to hitching posts] should have provided [the defendants] with some notice that their alleged conduct violated [the plaintiff]'s constitutional protection against cruel and unusual punishment." *Id.* at 745.

In *Taylor*, the inmate-plaintiff alleged that he did not eat or drink for nearly four days because he was confined in a cell that "was covered, nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet." 592 U.S. at 7. Thereafter, the plaintiff was moved "to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes." *Id.* After holding his bladder for more than 24 hours, the plaintiff "eventually (and involuntarily) relieved himself, causing the drain to overflow and raw sewage to spill across the floor." *Id.* This second cell did not have a bunk and the plaintiff was confined without clothing, forcing him "to sleep naked in sewage." *Id.* The Supreme Court held that the Fifth Circuit erred in granting qualified immunity to the corrections officer who locked the plaintiff in the "deplorably unsanitary" cells. *Id.* at 8. "Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that [the plaintiff]'s conditions of confinement offended the Constitution." *Id.* at 9.

**C.**    <u>**Claims Against Commissioner Hamm in His Official Capacity for Injunctive Relief**</u>

Plaintiff seeks injunctive relief in the form of a court order directing the ADOC to "require its medical service providers adjust and execute plans to provide urgent medical care at the time of need and non-urgent care w[ith]in 24 hours of request." (Doc. # 1 at 13.)  Although Commissioner Hamm is immune from suit in his official capacity for monetary damages, Eleventh Amendment immunity does not extend to suits against him in his official capacity for prospective declaratory or injunctive relief.  *See Scott v. Dunn*, 794 F. Supp. 3d 1119, 1125 (M.D. Ala. 2023); *McClure v. Houston Cnty.*, 306 F. Supp. 2d 1160, 1166 n.3 (M.D. Ala. 2003).  However, Commissioner Hamm argues that Plaintiff lacks standing to seek his requested injunctive relief for two reasons:  First, because YesCare was not the medical service provider at the time of the incident; and second, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of *future* injury."  (Doc. # 17 at 20 (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)).)

Addressing Hamm's first argument, the proper medical service provider—Wexford Health Sources, Inc.—has already been substituted for YesCare.  *See supra* note 1.  As to Hamm's second argument, taking the facts in the light most favorable to Plaintiff, he has not alleged "a real and immediate—as opposed to merely

conjectural or hypothetical—threat of *future* injury." *Church*, 30 F.3d at 1337. While "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, if unaccompanied by any continuing, present adverse effects." *Id.* (cleaned up) (first quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); and then quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

To support his request for injunctive relief, Plaintiff offers only his injuries suffered in March of 2023; he does not allege any real and immediate threat of future injury. Consequently, Plaintiff's claims against Commissioner Hamm in his official capacity for injunctive relief will be dismissed without prejudice.

**D.    Claims Against Commissioner Hamm in His Individual Capacity for Injunctive Relief**

To the extent that Plaintiff sues Commissioner Hamm in his individual capacity seeking injunctive relief, he lacks standing to do so. *See Gilley v. Gwathney*, 2025 WL 2154305, at *2 (M.D. Ala. July 29, 2025). To have Article III standing, a plaintiff must show (1) that he suffered a concrete injury in fact; (2) that the defendant likely caused the injury; and (3) that a favorable judicial decision would likely redress the injury. U.S. Const. art. III, § 2, cl. 1. Here, redressability is at issue. In his individual capacity, Commissioner Hamm is unable to "require . . . medical services providers [for the ADOC] to adjust and execute plans to provide

urgent medical at the time of need and non-urgent care w[ith]in 24 hours," as Plaintiff requests. *See Barnes v. Dunn*, 2022 WL 10264034, at *5 (N.D. Ala. Aug. 17, 2022) ("The[] defendants have no power in their individual capacities to take any action with respect to the conditions of ADOC facilities, and therefore, any order directing them as individuals to address prison conditions would not redress the plaintiff's alleged injury."), *R&R adopted*, 2022 WL 4365709 (N.D. Ala. Sep. 21, 2022).

Because Plaintiff's request for injunctive relief can be satisfied only by public officials acting within their official capacities, a favorable judicial decision would not redress Plaintiff's alleged injury. Without redressability, Plaintiff does not have standing, and without standing, this court lacks subject matter jurisdiction. Accordingly, insofar as Plaintiff brings claims against Commissioner Hamm in his individual capacity for injunctive relief, those claims will be dismissed with prejudice.

## V. CONCLUSION

Based on the foregoing, it is ORDERED that Commissioner Hamm's motion to dismiss (Doc. # 16) is GRANTED as follows:

(1)    Plaintiff's 42 U.S.C. § 1983 claims against Commissioner Hamm in his official capacity for monetary damages are DISMISSED with prejudice;

(2)    Plaintiff's 42 U.S.C. § 1983 claims against Commissioner Hamm in his

individual capacity for monetary damages are DISMISSED with prejudice;

(3)    Plaintiff's 42 U.S.C. § 1983 claims against Commissioner Hamm in his official capacity for injunctive relief are DISMISSED without prejudice; and

(4)    Plaintiff's 42 U.S.C. § 1983 claims against Commissioner Hamm in his individual capacity for injunctive relief are DISMISSED with prejudice.

It is further ORDERED as follows:

(1)    The Clerk of Court is DIRECTED to terminate Plaintiff's "motion in opposition" (Doc. # 32); and

(2)    The Clerk of Court is DIRECTED to terminate Commissioner Hamm as a party to this action.

DONE this 3rd day of February, 2026.

_____
   /s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE