IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARNELL JARMANE PERKINS,    )
AIS # 233410,    )
    )
        Plaintiff,    )
    )
    v.    )    CASE NO. 2:25-CV-188-WKW
    )    [WO]
DEBORAH CROOK, *et al.*,    )
    )
        Defendants.    )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Darnell Jarmane Perkins, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action against multiple Defendants "in their personal and official capacities"—John Q. Hamm, Commissioner of the Alabama Department of Corrections (ADOC)[1]; Deborah Crook, Deputy Commissioner of Health Services for the ADOC; Wexford Health Sources, Inc.[2]; Sgt. Robinson; Officer Chaney; and

---

[1] Commissioner Hamm's motion to dismiss was granted on February 3, 2026, and he is no longer a Defendant in this action.  (*See* Doc. # 61.)

[2] Plaintiff originally named CHS AL, LLC d/b/a YesCare as a Defendant.  However, it has since been determined that Wexford Health Sources, Inc. was the healthcare entity that was contracting with the ADOC to provide healthcare services to inmates at the time alleged by Plaintiff.  (*See* Doc. # 38.)  Throughout this opinion, Wexford has been substituted for YesCare as needed.

Fictitious Parties A–F.[3]  (Doc. # 1 at 1, 2.)  Plaintiff alleges that Defendants have shown deliberate indifference to his health and safety and that they failed to protect Plaintiff from assault and injuries by another inmate while knowing of dangerous prison conditions.  (*Id.* at 2–3.)

In response to Plaintiff's complaint, Deputy Commissioner Crook filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted (Doc. # 41), along with a brief in support (Doc. # 42).  Thereafter, Plaintiff filed a response in opposition (Doc. # 55), and Crook filed a reply (Doc. # 56).

For the reasons to follow, to the extent that Deputy Commissioner Crook seeks dismissal of all claims against her for Plaintiff's failure to exhaust administrative remedies, her motion to dismiss (Doc. # 41) will be denied. Otherwise, Deputy Commissioner Crook's motion to dismiss (Doc. # 41) will be granted, with some claims dismissed with prejudice and some without.

---

[3] Plaintiff's claims against Fictitious Parties A–F were stricken from the complaint on February 9, 2026.  (*See* Doc. # 63.)

## II.  STANDARDS OF REVIEW

### A.  <u>Rule 12(b)(1)</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction.  *See Neelley v. Walker*, 67 F. Supp. 3d 1319, 1321 (M.D. Ala. 2014); *Hampton v. Hamm*, 2022 WL 69214, at *1 (M.D. Ala. Jan. 6, 2022).  A Rule 12(b)(1) attack on subject matter jurisdiction can be either "facial" or "factual."  *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008).  The challenge here will be analyzed facially.  A facial attack "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2008) (cleaned up) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  In evaluating whether the complaint "sufficiently allege[s] a basis of subject matter jurisdiction," the court employs standards similar to those governing Rule 12(b)(6) review.  *Hampton*, 2022 WL 69214, at *1 (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013)).

### B.  <u>Rule 12(b)(6)</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which

requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Reprod. Health Servs. v. Strange*, 204 F. Supp. 3d 1300, 1309–10 (M.D. Ala. 2016) (quoting Fed. R. Civ. P. 8(a)(2)).  Evaluating a Rule 12(b)(6) motion to dismiss requires the court to "accept as true the facts alleged in the complaint, drawing all reasonable inferences in [the] plaintiff's favor." *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018) (citation omitted).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The allegations should present a "plain statement possessing enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (cleaned up).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Although the facts alleged by the plaintiff must be taken as true, mere conclusory assertions "are not entitled to the assumption of truth." *See id.* at 679.

*Pro se* pleadings are liberally construed and held "to less stringent standards" than pleadings drafted by attorneys. *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, the allegations still "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 557. The court cannot "rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs. v. Escambia Cnty.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by*, *Iqbal*, 556 U.S. 662.

### III.  THE COMPLAINT'S ALLEGATIONS

The complaint (Doc. # 1) and accompanying declaration (Doc. # 1-1) allege the following.

### A.  <u>Plaintiff's Assault</u>

Plaintiff claims that, on March 8, 2023, at Bullock Correctional Facility, he was the victim of an unprovoked assault by a fellow inmate, Sean Carter. Carter allegedly approached Plaintiff at approximately 8:50 p.m. and began assaulting him "because [Carter] was under the influence of some type of unauthorized drug, as was evident by his erratic behavior." Plaintiff was attacked for "several minutes," during which he was stabbed twice in his right side and "had the flesh bitten off [his] right-hand thumb, leaving it attached only by a narrow strip of skin." (Doc. # 1-1 at 1.)

Plaintiff alleges that there was either no officer in the dorm at the time of his assault or the assigned officer had left his or her post. (*Id.* at 2.) Plaintiff claims that, although a cube officer was on duty, it is unclear whether the cube officer was distracted and thus delayed reporting the assault to Sgt. Robinson and Officer Chaney, or whether Sgt. Robinson and Officer Chaney delayed their response to a report by the cube officer. Either way, Plaintiff says that it took eight to ten minutes for Sgt. Robinson and Officer Chaney to arrive, remove Plaintiff and Carter from the dorm, and take them to the infirmary. Plaintiff's side was bandaged, and the "flesh [was] roughly shoved back onto the bones of [his] thumb and gauze wrapped around it." He then was given two Tylenol and sent back to the dorm. (*Id.*)

The next morning, Plaintiff was seen by Dr. Siddiq, who informed prison staff that Plaintiff needed to be taken to the hospital immediately. Plaintiff alleges that over two hours passed before he was taken to the hospital and that, by the time he arrived at the hospital for proper treatment, over fifteen hours had passed. He was told by the doctor at the hospital that it was likely his thumb would need to be amputated. The surgeon was able to restore blood flow and reattach Plaintiff's thumb; however, he was unable to restore full functionality and sensitivity. Plaintiff can move his thumb but has no sense of touch and no grip strength. He not only experiences physical pain but also emotional distress, fear, and hypersensitivity to other inmates being near him. Moreover, although Plaintiff has communicated these

issues to mental health staff and corrections officers, he has received "no significant help with these problems." (*Id.* at 3.)

Plaintiff accuses Defendants of showing deliberate indifference to his health and safety "while knowing of the dangerous conditions at the prison." (Doc. # 1 at 2, 3.) Plaintiff alleges that Defendants' deliberate indifference to his health and safety led to his assault and that Defendants failed to protect Plaintiff from the assault and resulting injuries. (*Id.* at 2–3; *see also* Doc. # 1-1 at 1.)

## B.    Claims Against Deputy Commissioner Crook

This opinion focuses primarily on the allegations and claims against Deputy Commissioner Crook, but for context, general allegations against other Defendants are included.

### 1.    *General Allegations Against "All Defendants Identified as Officials and[/]or Officers in the Employ of the [ADOC]"*

Attached to Plaintiff's complaint is a handwritten document titled "Claims Against the Defendants." (Doc. # 1 at 4–12.) Plaintiff begins with generalized deliberate-indifference allegations against "all Defendants identified as officials and[/]or officers in the employ of the [ADOC]." (*See id.* at 4–5.) He claims that ADOC officials and officers knew or had reason to know,

> when taking the actions alleged to[] have been taken with deliberate indifference[,] that (1) the conditions of the prisons of the [ADOC], including but not limited to [Bullock Correctional Facility], were and remain unsafe and pervasively violent; (2) said conditions are the result of excessive overcrowding, extreme understaffing[,] and dangerous

7

> logistical issues within said prisons; (3) said issues have further resulted in and/or contributed to a general and dangerous attitude of deliberate indifference to the health and safety of inmates in said prisons, being displayed by the officials, correctional officers[,] and support staff . . . as well as a heightened level of stress, anxiety[,] and generalized fear amongst the inmates of said prisons, including but not limited to the Plaintiff; and (4) the actions taken by them and alleged to be deliberately indifferent posed a substantial risk to the health and safety of said inmates.

(Doc. # 1 at 4.)  In a declaration accompanying his complaint, Plaintiff clarifies that ADOC officials and officers "knew or had reason to know" of the conditions at Bullock Correctional Facility and other ADOC facilities because the issues of "pervasive violence, overcrowding[,] and insufficient staff" have "been made known, not only to ADOC officials, but to the general public as well, through an investigation by and lawsuits brought against the ADOC, by the United States Department of Justice (DOJ)."  (Doc. # 1-1 at 1.)  Plaintiff alleges that these issues and Defendants' deliberate indifference to inmates' health and safety led to his unprovoked assault.

## 2. *General Allegations Against Commissioner Hamm, Deputy Commissioner Crook, and Wexford Health Sources, Inc.*

With respect to Commissioner Hamm, Deputy Commissioner Crook, and Wexford Health Sources, Inc., Plaintiff alleges that these Defendants

> and those employed by [Wexford] did also know that (1) YesCare Corp. is also the same entity which was previously contracted to provide medical care to the inmates in the ADOC under the names of Wexford and Corizon; (2) the entity now doing business as YesCare Corp. and previously known as Wexford and Corizon has a long history of causing

and/or contributing to the constitutionally inadequate medical care, provided to inmates of the ADOC prisons, by and through its policies and customs . . . .

(Doc. # 1 at 4–5.)  He claims that these "policies and customs"

> (1) limit the medical intervention medical staff, specifically nurses can provide to inmates, without authorization from the facility physician; (2) limit the medical intervention which can be provided by the facility physicians without prior authorization from the [Wexford] Corporate medical board; (3) cause delays in an inmate's ability to receive needed and often times urgent medical attention; (4) force inmates to navigate a grievance process which is intended to frustrate and ultimately defeat an inmate's ability to receive proper and timely medical care . . . .

(*Id.* at 5.)  Finally, Plaintiff argues that

> said entity [has] a long history of filing bankruptcy when facing multiple suits for deliberately indifferent and constitution[ally] inadequate medical care, being provided to the inmates of prisons, by the medical staff . . . which staff are retained, when the entity files bankruptcy under one business name and continues . . . as a different business.

(*Id.*)

### 3.    *Claim # 4:  Deborah Crook*

Plaintiff argues that Deputy Commissioner Crook "act[ed] with deliberate indifference" to Plaintiff's health and safety "when she aided in and/or otherwise allowed [Wexford] to receive and/or maintain its contract with the ADOC, retain the same medical staff, and continue to enforce its . . . policies and customs."  (*Id.* at 7.) He alleges that this action on Crook's part "cause[d] and[/]or contribute[d] to the deliberate indifference of the medical staff" in treating Plaintiff's injuries following

his assault.  Plaintiff claims that the medical staff's treatment of his injuries "was grossly inadequate to the point of shocking the consequence [sic]."  Furthermore, he contends that the medical staff's deliberate indifference in treating his injuries "delayed urgently needed attention, and thereby resulted in further injury to the Plaintiff."  (*Id.*)

## C.    **Request for Relief**

Plaintiff requests injunctive relief in the form of a court order directing the ADOC to "require its medical service providers adjust and execute plans to provide urgent medical care at the time of need and non-urgent care w[ith]in 24 hours of request."  Additionally, Plaintiff seeks $250,000 in compensatory damages and $200,000 in punitive damages.  (*Id.* at 13.)

## IV.  DISCUSSION

Plaintiff brings this suit under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

§ 1983.

To state a claim under § 1983, a plaintiff must allege two elements.  First, he must allege a violation of a right protected by federal laws, and second, he must

allege that the violation was committed by a person acting under color of law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Beaubrun v. Dodge State Prison*, 2025 WL 2490396, at *3 (11th Cir. Aug. 29, 2025) (per curiam).

Plaintiff has sued Deputy Commissioner Crook in her official and individual capacities, alleging that Crook showed deliberate indifference to Plaintiff's health and safety and that this deliberate indifference led to Plaintiff's assault and the injuries that resulted therefrom. (Doc. # 1 at 1, 2.) Plaintiff brings his claims under the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. His claims fall into two categories: (1) claims relating to his alleged assault and injuries (*i.e.*, Eighth Amendment claims for deliberate indifference for failure to protect), and (2) claims relating to the alleged constitutionally inadequate medical care that he received after the alleged assault (*i.e.*, Eighth Amendment claims for deliberate indifference to Plaintiff's medical needs). Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*See* Doc. # 1 at 13.)

In her motion to dismiss, Deputy Commissioner Crook seeks dismissal of all claims against her because (1) Plaintiff has failed to exhaust his administrative remedies; (2) Crook is entitled to Eleventh Amendment immunity; (3) Crook is entitled to qualified immunity; (4) Plaintiff's complaint fails to state a claim for a violation of his constitutional rights; (5) Plaintiff's complaint fails to state an Eighth

Amendment claim for deliberate indifference based on his alleged inadequate medical care; (6) Plaintiff fails to state a claim based on supervisory liability; and (7) Plaintiff lacks standing.  (Doc. # 41.)

## A.    Exhaustion of Administrative Remedies

In her motion to dismiss, Deputy Commissioner Crook has raised the affirmative defense of failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act (PLRA).  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Its purpose is to provide "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

### 1.    *"Proper" Exhaustion and the ADOC's Inmate Grievance Policy*

The U.S. Supreme Court has held that the "[PLRA's exhaustion] provision 'requires proper exhaustion' of available prison grievance procedures, meaning a prisoner 'must complete the administrative review process in accordance with the

applicable procedural rules . . . as a precondition to bringing suit in federal court.'" *Perttu v. Richards*, 605 U.S. 460, 465 (2025) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006)). "Proper" exhaustion means *all* the administrative steps are followed, including an appeal. *See Allen v. Blakely*, 814 F. App'x 522, 526 (11th Cir. 2020) (per curiam) (quoting *Woodford*, 548 U.S. at 85). Determining the "boundaries of proper exhaustion" is done by examining "the requirements of the applicable prison grievance system." *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (citation and internal quotation marks omitted).

ADOC prisoners, like Plaintiff, are subject to the ADOC's Administrative Regulation Number 406 (AR 406), which established an inmate grievance policy, effective August 1, 2023. Grievances generally must be submitted within ten days of the incident. AR 406 § V.G. However, § V.Z.1.a exempts "an allegation of sexual abuse, sexual harassment, or any verbal or physical abuse or harassment" from the ten-day time limit.

For non-emergency grievances,[4] the process starts when an inmate submits a completed Inmate Grievance Form 406-A. AR 406 § V.Z.1.a. The grievance form

---

[4] If the inmate marks the grievance as an emergency, the IGO will receive a determination from the warden whether it qualifies as such. AR 406 § V.AA.1. AR 406 defines an emergency grievance as follows: "A grievance concerning matters which may necessitate a response outside regular policy time limits, including, but not limited to, issues alleging a substantial risk of imminent sexual or physical abuse." AR 406 § III.H. If a grievance qualifies as emergent, the warden must promptly address and document the emergency and the actions taken. AR 406

must be submitted, either manually or electronically (as available), to the institutional grievance officer (IGO).  AR 406 § V.Z.1.a; *see also* § III.K (defining "grievance").   The IGO collects all grievance forms, assigns each grievance a number, and maintains an institutional grievance log.  AR 406 § IV.C; § V.Z.1.a–.b.  The IGO then forwards the grievance to the appropriate supervisor or staff for investigation.  AR 406 § V.Z.1.b.  The IGO must provide a response to the inmate-grievant within ten days of receiving the grievance.  AR 406 § V.Z.1.d.  If the inmate disagrees with the decision, he must submit a written grievance appeal form to the IGO within ten days of receiving the decision.   Failure to appeal is considered acceptance of the decision.  AR 406 § V.Z.1.e.

Appeals are reviewed by the departmental guidance coordinator (DGC), who must issue a final decision on the grievance's merits, remedies, and requests within 60 business days of receiving the appeal.  This decision, which is final and not

---

§ V.AA.1; § IV.B.5.  There are some exceptions regarding which official must resolve the emergency grievance.  For example, "[a]ny grievance alleging physical or sexual abuse of an inmate by staff shall be directed to the LESD for resolution."  AR 406 § V.AA.1.  Additionally, "[f]or . . . allegations of verbal, physical, or sexual abuse by staff, the Warden/Designee shall take action as appropriate."  AR 406 § V.AA.1.  If the inmate disagrees with the actions taken, he must submit his appeal within 24 hours of the decision.  The DGC then must decide the appeal within 72 hours.   AR 406 §§ V.AA.3–.4; *see also* § IV.A.2 (denoting as a DGC responsibility "[r]eviewing appeals from inmates that reach Step 2 (Appeal)").  Unless there is a showing of good cause, failing to appeal on time is considered either abandoning the emergency grievance or accepting the decision and responsive action.  AR 406 § V.AA.3.

subject to further challenge, must confirm that the inmate has exhausted all available administrative remedies.  AR 406 §§ V.Z.2.a–.b.

2.     *The Two-Step Process for Deciding a Motion to Dismiss for Failure to Exhaust Administrative Remedies*

Exhaustion under the PLRA is a "standard affirmative defense" and is neither jurisdictional nor a pleading requirement.  *Perttu v. Richards*, 605 U.S. 460, 469 (2025).  In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit "established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust."  *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015) (citing *Turner*, 541 F.3d at 1082); *accord McGuire-Mollica*, 146 F.4th 1308, 1314 (11th Cir. 2025).  In the first step, "district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true."  *Whatley*, 802 F.3d at 1209 (citing *Turner*, 541 F.3d at 1082).  If the factual allegations, viewed in that light, show that the prisoner failed to exhaust available administrative remedies, the district court must dismiss the complaint.  *See McGuire-Mollica*, 146 F.4th at 1314 (citing *Turner*, 541 F.3d at 1082).  If dismissal is not warranted at the first step on the prisoner's view of the facts, the process moves to the second step, where the district court "makes specific findings to resolve disputes of fact" concerning exhaustion.[5]  *See Whatley*,

---

[5] No party has argued that the *Perttu* Court's pronouncement—"that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by

802 F.3d at 1209 (citing *Turner*, 541 F.3d at 1082–83).  The district court "then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Turner*, 541 F.3d at 1083.  Throughout this two-step process, the burden is on the defendant to prove that the plaintiff has not exhausted his "available administrative remedies." *McGuire-Mollica*, 146 F.4th at 1314 (quoting *Turner*, 541 F.3d at 1082).

### 3.    *The Unavailability Exception to the PLRA's Exhaustion Requirement*

Under the PLRA, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016).  In *Ross*, the United States Supreme Court described "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643.  As articulated in *Ross*, an administrative grievance process is unavailable (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *id.*; (2) when the process is "so opaque that it becomes, practically speaking, incapable of use," *id.*; and (3) "when prison administrators thwart inmates from taking advantage of a

---

the Seventh Amendment," 605 U.S. at 479—which relates to *Turner*'s second step, is relevant here.

grievance process through machination, misrepresentation, or intimidation," *id.* at 644.

The burden is on the defendant to show the availability of an administrative remedy. *Geter v. Baldwin State* , 974 F.3d 1348, 1356 (11th Cir. 2020). Once the defendant meets that burden, the burden shifts to the plaintiff, who then must demonstrate that the grievance procedure was "subjectively" and "objectively" unavailable to him. *Id.*

**4.** ***Analysis of Proper Exhaustion Under the* Turner *Two-Step Process, Taking the Unavailability Exception into Account***

In Deputy Commissioner Crook's brief in support of her motion to dismiss, she argues that Plaintiff failed to exhaust administrative remedies before filing suit. She states that "Plaintiff acknowledges that Wexford Health had a grievance process which he claims is purportedly intended to frustrate and ultimately defeat an inmate[']s ability to receive proper and timely medical care." (Doc. # 42 at 22.) She points to the contradiction in Plaintiff's declaration where he claims that "[t]here are no administrative remedies available to resolve the alleged injuries caused by assault" and how Plaintiff "was supposedly told it was too late to complain after he allegedly complained about the alleged inadequate medical care he claims to have received." Notably, Deputy Commissioner Crook concludes her argument: "Therefore, *to the extent exhaustion was available* and the Plaintiff failed to exhaust

his administrative remedies before filing this suit, this case must be dismissed under the PLRA." (*Id.* (emphasis added).)

In his response, Plaintiff argues that Crook's "claim concerning exhaustion of remedies is without merit because [she has] provided no evidence or basis for this claim."[6] (Doc. # 55 at 4.)  He provides three points to bolster this argument.  First, he says that Crook has "presented no evidence of any administrative remedies which exist to address claims of either a failure to protect or the provision of inadequate medical care." (*Id.* at 4–5.)  Second, he claims that Crook has not "provided any evidence of the availability of any such remedies being made known to the Plaintiff." (*Id.* at 5.)  Third, he contends that Crook has not "provided any evidence of available relief to be provided in the event of claims involving a failure to protect from a generalized risk of harm or inadequate medical treatment." (*Id.*)

To reiterate, throughout the *Turner* two-step process, the burden is on the defendant to prove that the plaintiff has not exhausted his "*available* administrative remedies." *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (emphasis added) (quoting *Turner*, 541 F.3d at 1082).  Where, as here,

---

[6] To support his position, Plaintiff quotes a pre-PLRA case from the Fifth Circuit. (*See* Doc. # 55 at 4 & 5 (quoting *Patsy v. Fla. Int'l Univ.*, 634 F.2d 900, 912–13 (5th Cir. 1981), *rev'd sub nom.*, *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 456 (1982)).)  He also quotes a pre-PLRA case from the United States District Court for the Northern District of Florida. (*See id.* at 5 (quoting *Shinholster v. Graham*, 527 F. Supp. 1318, 1329 (N.D. Fla. 1981)).)  Neither case cited by Plaintiff provides support for his position, as the PLRA made exhaustion of administrative remedies "a precondition to bringing suit in federal court." *Perttu v. Richards*, 605 U.S. 460, 465 (2025) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

the plaintiff alleges that the applicable administrative-remedy process is unavailable to him, the defendant bears the threshold burden of showing the availability of said process. *See Geter v. Baldwin State*, 974 F.3d 1348, 1356 (11th Cir. 2020). Deputy Commissioner Crook has not met this threshold burden. She simply states that "Plaintiff acknowledges that Wexford Health had a grievance process which he claims is purportedly intended to frustrate and ultimately defeat an inmate[']s ability to receive proper and timely medical care." (Doc. # 42 at 22.) Multiple issues flow from this assertion. For one, whether or not Wexford Health has its own grievance process separate from the ADOC's is immaterial. The facts, when viewed in Plaintiff's favor, indicate that an applicable grievance procedure is established by AR 406. *See* Part VI.A.1. Furthermore, because Wexford was the healthcare entity contracting with the ADOC to provide medical services in March 2023, it would logically follow that inmates could use the grievance procedure outlined in AR 406 to address complaints about medical care.

Notwithstanding Deputy Commissioner Crook's circular argument regarding Plaintiff's acknowledgment of "Wexford Health['s] . . . grievance process," she provides no evidence of the *availability* of any such grievance process. Indeed, her recitation of Plaintiff's claims in his declaration—namely, that he "was supposedly told it was too late to complain after he allegedly complained about the alleged inadequate medical care he claims to have received" (*Id.*)—seems to indicate that

administrative remedies were unavailable to Plaintiff under the third circumstance articulated in *Ross v. Blake*—that is, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. 632, 644 (2016). If Plaintiff was, in fact, told that it was "too late to complain" after his alleged assault and his receipt of allegedly inadequate medical care, that statement would constitute a misrepresentation, presumably designed to thwart Plaintiff from utilizing the grievance process.

Taking Plaintiff's factual allegations as true, dismissal of the complaint for Plaintiff's failure to exhaust his available administrative remedies is not warranted under the first *Turner* step. Turning then to the second *Turner* step, the court must (a) "make specific findings in order to resolve the disputed factual issues related to exhaustion," *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008), and (b) determine "whether under those findings the prisoner has exhausted his *available* administrative remedies," *id.* at 1083 (emphasis added). The burden remains on the defendant to prove that a grievance process is available to the plaintiff, *see Geter*, 974 F.3d at 1356, and that the plaintiff has "not exhausted his *available* administrative remedies," *Turner*, 541 F.3d at 1082 (emphasis added).

There is not much of a factual dispute in this case. Because Crook has failed to show that a grievance process was actually available to Plaintiff, she cannot

20

sustain her burden of proving that Plaintiff failed to exhaust his *available* administrative remedies. Accordingly, to the extent that Deputy Commissioner Crook's motion to dismiss seeks dismissal of all claims against her based on Plaintiff's failure to exhaust his administrative remedies, the motion will be denied.

## B.   Claims Against Deputy Commissioner Crook in Her Official Capacity for Monetary Damages

Plaintiff's claims against Deputy Commissioner Crook in her official capacity for monetary damages are barred by the Eleventh Amendment. The Eleventh Amendment bars citizens of a state from bringing suit against that state unless the state has expressly waived Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (per curiam) (citing *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Eleventh Amendment immunity extends to state officials in their official capacities in cases where, for all practical purposes, "the state is the real, substantial party in interest." *Carr*, 916 F.2d at 1524 (quoting *Halderman*, 465 U.S. at 101). "[T]he state is considered the real party in interest" when an award of damages against the named defendant would be paid by the state. *Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1257–58 (M.D. Ala. 2007) (quoting *Carr*, 916 F.2d at 1524).

Here, Plaintiff's official-capacity claims against Deputy Commissioner Crook for monetary damages are tantamount to claims against the State of Alabama itself and must be dismissed with prejudice.

## C.    Claims Against Deputy Commissioner Crook in Her Individual Capacity for Monetary Damages

Plaintiff also seeks monetary damages from Deputy Commissioner Crook in her individual capacity.  In her motion to dismiss and brief in support, Deputy Commissioner Crook raises the defense of qualified immunity.  (*See* Doc. # 41 ¶ 6; Doc. # 42 at 18–21.)  As outlined below, Plaintiff's claims against Deputy Commissioner Crook in her individual capacity for monetary damages will be dismissed with prejudice based on qualified immunity.

### 1.    *Qualified Immunity*

Qualified immunity shields government officials from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Eleventh Circuit applies a two-part test to determine whether a government official is entitled to qualified immunity.  First, "an official must establish that he was acting within the scope of his discretionary authority when the

allegedly wrongful acts occurred."[7] *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (cleaned up). "Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citation omitted). In the context of a motion to dismiss on the grounds of qualified immunity, dismissal is required "when the complaint fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation and internal quotation marks omitted).

The second step of the qualified-immunity test can be broken down into two sub-steps. To overcome qualified immunity, the plaintiff must show "that '(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'" *Miller v. Palm Beach Cnty. Sheriff's Off.*, 129 F.4th 1329, 1333 (11th Cir. 2025) (quoting *Hollman ex rel. Hollman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). The order in which these sub-steps are addressed is immaterial. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1296 (11th Cir. 2025) ("Judges may decide which

---

[7] "The term 'discretionary authority' covers 'all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'" *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)). Here, the parties do not dispute that Plaintiff's claims relate to Deputy Commissioner Crook's actions taken while performing her official duties and within the scope of her authority. Thus, the first step of the two-part qualified-immunity test is met.

of the two prongs of this analysis to address first in light of the circumstances of the case at hand.").

### a.    Constitutional Violations

To overcome qualified immunity, the facts alleged by Plaintiff must "make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232. Liberally construed, Plaintiff's complaint alleges two types of deliberate-indifference claims against Deputy Commissioner Crook: (1) a failure-to-protect deliberate-indifference claim (an "excessive-inmate-violence" claim),[8] and (2) a claim of deliberate indifference to Plaintiff's serious medical needs. There is, however, a caveat: As Deputy Commissioner of Health Services for the ADOC, Crook is considered a supervisory official.

The standard by which supervisors are held liable in their individual capacities for their subordinates' actions is "extremely rigorous." *Stalley v. Cumbie*, 124 F.4th 1273, 1288 (11th Cir. 2024) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009)). "[S]upervisory liability under § 1983 occurs either when the

---

[8] In *Barefield v. Dunn*, this court clarified that claims based on a failure-to-protect theory come in two forms: specific and general. *See* 688 F. Supp. 3d 1026, 1063–64 (M.D. Ala. 2023). A specific deliberate-indifference claim is "based on specific, or individualized, threats posed by certain inmates or groups of inmates to a specific plaintiff or class of inmates like [the] plaintiff." *Id.* at 1063. A general deliberate-indifference claim is one where the "conditions of confinement themselves generally pose[] a substantial risk of serious harm from inmate-on-inmate violence to all inmates forced to live under those conditions." *Id.* at 1064 (denoting such claims as "excessive-inmate-violence" claims). With respect to Deputy Commissioner Crook, Plaintiff appears to allege the latter.

24

supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *overruled in part on other grounds by*, *Pearson*, 555 U.S. 223.

### i.    Claim 1:  Failure to Protect Plaintiff from Excessive Inmate Violence

Plaintiff's general allegations against "all Defendants identified as officials and[/]or officers in the employ of the [ADOC]" indicate that Plaintiff is attempting to assert a deliberate-indifference claim against Deputy Commissioner Crook based on her purported failure to protect Plaintiff from excessive inmate violence.

The Eighth Amendment's prohibition against "cruel and unusual punishments" requires prison officials to "take reasonable measures to guarantee the safety of the inmates," including but not limited to "protect[ing] prisoners from violence." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); *accord Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *see also Tullis v. Dixon*, 2025 WL 3181635, at *2 (M.D. Fla. Nov. 14, 2025) ("[T]he duty to 'take reasonable measures to guarantee the safety of the inmates' does not make prison officials 'the guarantor[s] of [inmates'] safety.'" (first quoting *Farmer*, 511 U.S. at 832; and then quoting *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*,

400 F.3d 1313, 1321 (11th Cir. 2005))).   To be sure, while an inmate "has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates, . . . . '[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured.'"   *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (quoting *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981) ("It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials.")).

A failure-to-protect deliberate-indifference claim has three elements.   *See Cox*, 15 F.4th at 1357–58.  First, the plaintiff must allege that he was "incarcerated under conditions posing a substantial risk of serious harm."   *Id.* at 1358 (quoting *Farmer*, 511 U.S. at 834).  Second, he must demonstrate "that the prison official had a sufficiently culpable state of mind amounting to deliberate indifference."   *Id.* (cleaned up).   Third, the plaintiff must show causation (*i.e.*, that the alleged constitutional violation caused his injuries).   *Id.*   As to the second element, to establish liability on a deliberate indifference claim, a plaintiff must demonstrate: (1) "that he suffered a deprivation that was objectively, 'sufficiently serious'"; (2) that the defendant acted with subjective recklessness as used in the criminal law––*i.e.*, "the defendant was actually, subjectively aware that h[er] own conduct caused a substantial risk of serious harm to the plaintiff"; and (3) that the defendant did not "respond[] reasonably" to a "substantial risk to inmate health or safety" about which

she "actually knew." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (citations omitted).

Concerning the first element of a deliberate-indifference failure-to-protect claim, Plaintiff argues, in conclusory fashion, that Bullock Correctional Facility is "unsafe and pervasively violent" due to "excessive overcrowding, extreme understaffing[,] and dangerous logistical issues" (Doc. # 1 at 4), that inmate-on-inmate violence is "almost constant," and that his March 2023 assault makes him "a victim of said pervasive violence." (Doc. # 1-1 at 1.) Plaintiff argues that these broad allegations mean he is incarcerated under conditions that pose a substantial risk to his health and safety. However, Plaintiff must allege "that serious inmate-on-inmate violence was the norm or something close to it." *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005).

Even assuming Plaintiff plausibly alleged that he was incarcerated under conditions posing a substantial risk of serious harm, he has not shown that Deputy Commissioner Crook "had a sufficiently culpable state of mind amounting to deliberate indifference." *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (cleaned up). First, Plaintiff must demonstrate that he suffered an "objectively, 'sufficiently serious'" constitutional deprivation. Second, assuming that Plaintiff has alleged that he suffered an "objectively, 'sufficiently serious'" deprivation, he also must allege that Deputy Commissioner Crook "was actually, subjectively aware

that *h[er]own conduct* caused a substantial risk of serious harm to [Plaintiff]." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (emphasis added). "Absent a particularized focus on a prison official's subjective awareness of the risk created by h[er] own conduct, there is a danger that [s]he could be held liable for conduct that does not remotely resemble the 'inflict[ion]' of 'punishment[.]'" *Id.* at 1259 (alterations in original).  Plaintiff's claim fails at this second element.

Plaintiff has not shown that Deputy Commissioner Crook possessed "more than a generalized awareness of risk."  *Marbury*, 936 F.3d at 1234 (quoting *Caldwell*, 748 F.3d at 1101).  While Plaintiff's blanket assertion and reference to the DOJ's investigation and lawsuit indicate that Crook, as an ADOC official, may have had a "generalized awareness" of risks in ADOC prisons, her "generalized awareness" is not enough to allege that she "had a sufficiently culpable state of mind amounting to deliberate indifference." *See Cox*, 15 F.4th at 1358 (cleaned up).  To that end, Plaintiff has failed to plausibly allege that Crook was "actually, subjectively aware that h[er] own conduct caused a substantial risk of serious harm to [Plaintiff]." *Wade*, 106 F.4th at 1258; *see also Beaubrun v. Dodge State Prison*, 2025 WL 2490396, at *4 (11th Cir. Aug. 29, 2025) (per curiam) (affirming the Rule 12(b)(6) dismissal of an Eighth Amendment failure-to-protect claim where "[the plaintiff] didn't allege that the defendant had subjective knowledge of a risk of serious harm").

Furthermore, because Plaintiff has not alleged that Deputy Commissioner Crook, as a supervisory official, was physically present during, or personally involved in, the alleged assault, he must allege a causal connection between Crook's actions and the alleged constitutional deprivation that he suffered.  *See Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1298–99 (11th Cir. 2023) (analyzing the grant of a Rule 12(b)(6) motion to dismiss on grounds of qualified immunity).  Plaintiff has not presented any allegations demonstrating a causal link between Crook's actions and the alleged constitutional deprivation that he suffered.  Plaintiff makes no specific allegations against Crook and how her acts or omissions contributed to Plaintiff being assaulted by another inmate.  Plaintiff has pointed to no custom or policy on Crook's part.  Consequently, Plaintiff's allegations against Deputy Commissioner Crook are insufficient to make out a supervisory constitutional violation.

### ii.    Claim 2:  Deliberate Indifference to Plaintiff's Serious Medical Needs

The Cruel and Unusual Punishments Clause of the Eighth Amendment "should be understood to prohibit government officials from exhibiting 'deliberate indifference to [the] serious medical needs of prisoners.'"  *Wade*, 106 F.4th 1251 at 1255 (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).  "To establish liability on a deliberate indifference claim, a plaintiff must demonstrate that:  (1) the injured party suffered a deprivation that was objectively, 'sufficiently serious,' and (2) the defendant acted with 'subjective recklessness as

used in the criminal law.'" *Wingo v. WellStar Health Sys., Inc.*, 160 F.4th 1184, 1190 (11th Cir. 2025) (quoting *Wade*, 106 F.4th at 1262).

"To meet the second step, the plaintiff must show that the 'defendant was actually, subjectively aware that h[er] own conduct caused a substantial risk of serious harm to the plaintiff.'" *Id.* at 1190–91 (quoting *Wade*, 106 F.4th at 1262). At the pleading stage, this means that Plaintiff must allege facts that plausibly show that he suffered a deprivation that was objectively, sufficiently serious and that Deputy Commissioner Crook acted with subjective recklessness as used in the criminal law. *See, e.g.*, *O'Connor v. Reddish*, 2026 WL 74569, at *3 (11th Cir. Jan. 9, 2026) (per curiam) ("[T]o succeed on his [deliberate-indifference] claim against [the defendant], [the plaintiff] must allege facts that plausibly show that [the defendant] knew that it would seriously jeopardize [the plaintiff's] health to give him a sick-call form instead of referring him for immediate care. But the facts he asserts don't support that conclusion.").

Plaintiff's claim against Deputy Commissioner Crook for deliberate indifference to his serious medical needs fails at the first element because he has not alleged an objectively, sufficiently serious constitutional deprivation. Plaintiff says that he and Carter were removed from the dorm and taken to the infirmary for treatment and body charts approximately eight to ten minutes after the assault. (Doc. # 1-1 at 2.) Even if not world-class medical care, Plaintiff received medical attention

following his assault.  "[T]he Constitution doesn't require that the medical care provided to prisoners be 'perfect, the best obtainable, or even very good.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (citation omitted). "Rather, medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (cleaned up).  Although Plaintiff claims that the medical staff's treatment of his post-assault injuries "was grossly inadequate to the point of shocking the consequence [sic]" (Doc. # 1 at 7), this conclusory assertion is insufficient to allege that Plaintiff received medical care violative of the Eighth Amendment.

Plaintiff also has not alleged that Deputy Commissioner Crook was informed about or involved in the medical care that Plaintiff received following the alleged assault.  Because Plaintiff has not alleged that Deputy Commissioner Crook was physically present during, or personally involved in, the alleged constitutionally inadequate medical care provided to Plaintiff, he must show a causal connection between Crook's actions and the alleged constitutional deprivation.  *See Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1298–99 (11th Cir. 2023) (analyzing the grant of a Rule 12(b)(6) motion to dismiss on grounds of qualified immunity).  While Plaintiff vaguely alludes to Wexford's "policies and customs," he does not allege any policies

or customs on Crook's part.  Accordingly, Plaintiff's allegations against Deputy Commissioner Crook are insufficient to make out a constitutional violation.

### b.    Clearly Established Right

Where a defendant raises the affirmative defense of qualified immunity at the Rule 12(b)(6) stage, "the district court must dismiss any claims that fail to allege a violation of clearly established law." *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022) (citation omitted).  "To be clearly established, the contours of a right must be sufficiently clear such that every reasonable officer would have understood his conduct to violate that right." *Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1296 (11th Cir. 2025).

First, Plaintiff has not cited any "case law with indistinguishable facts." *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (citation omitted).  Second, Plaintiff has not pointed to a "broad statement of principle within the Constitution, statute, or case law." *Id.* (citation omitted)  Third, the allegedly unconstitutional actions taken by Deputy Commissioner Crook fall far short of the actions alleged in "obvious clarity" cases.  *See id.* at 1258–59 (discussing "obvious clarity" cases).

### c.    Summary of Qualified Immunity Analysis

Because Plaintiff has failed to plausibly allege that Deputy Commissioner Crook violated the Constitution or a clearly established right as to the Eighth

Amendment deliberate-indifference claim, Crook is entitled to qualified immunity. Therefore, Plaintiff's individual-capacity claim against Deputy Commissioner Crook for monetary damages will be dismissed with prejudice.

**D.      Claims Against Deputy Commissioner Crook in Her Official Capacity for Injunctive Relief**

Plaintiff seeks injunctive relief in the form of a court order directing the ADOC to "require its medical service providers adjust and execute plans to provide urgent medical care at the time of need and non-urgent care w[ith]in 24 hours of request." (Doc. # 1 at 13.)  Although Deputy Commissioner Crook is immune from suit in her official capacity for monetary damages, Eleventh Amendment immunity does not extend to suits against her in her official capacity for prospective declaratory or injunctive relief. *See Scott v. Dunn*, 794 F. Supp. 3d 1119, 1125 (M.D. Ala. 2023); *McClure v. Houston Cnty.*, 306 F. Supp. 2d 1160, 1166 n.3 (M.D. Ala. 2003).  In Crook's brief in support of her motion to dismiss, she argues that Plaintiff lacks standing to seek his requested injunctive relief because "Plaintiff has not and cannot show a sufficient likelihood that he will be affected in the future by the alleged unlawful conduct." (Doc. # 42 at 17–18.)

"Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994).  Taking

the facts alleged by Plaintiff in the light most favorable to him, he has not alleged "a real and immediate—as opposed to merely conjectural or hypothetical—threat of *future* injury." *Id.*  While "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, if unaccompanied by any continuing, present adverse effects." *Id.* (cleaned up) (first quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); and then quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

To support his request for injunctive relief, Plaintiff offers only his injuries from the March 2023 assault and the medical care that he received soon thereafter; he does not allege any real and immediate threat of future injury.  Consequently, Plaintiff's claims against Deputy Commissioner Crook in her official capacity for injunctive relief will be dismissed without prejudice.

## E.   Claims Against Deputy Commissioner Crook in Her Individual Capacity for Injunctive Relief

To the extent that Plaintiff sues Deputy Commissioner Crook in her individual capacity seeking injunctive relief, he lacks standing to do so.  *See Gilley v. Gwathney*, 2025 WL 2154305, at *2 (M.D. Ala. July 29, 2025).  To have Article III standing, a plaintiff must show (1) that he suffered a concrete injury in fact; (2) that the defendant likely caused the injury; and (3) that a favorable judicial decision would likely redress the injury.  U.S. Const. art. III, § 2, cl. 1.  Here, it is already

established that Crook did not personally participate in, and did not likely cause, Plaintiff's alleged injuries. Moreover, redressability is at issue. In her individual capacity, Deputy Commissioner Crook cannot "require . . . medical services providers [for the ADOC] to adjust and execute plans to provide urgent medical at the time of need and non-urgent care w[ith]in 24 hours," as Plaintiff requests. *See Barnes v. Dunn*, 2022 WL 10264034, at *5 (N.D. Ala. Aug. 17, 2022) ("The[] defendants have no power in their individual capacities to take any actions with respect to the conditions of ADOC facilities, and therefore, any order directing them as individuals to address prison conditions would not redress the plaintiff's alleged injury."), *R&R adopted*, 2022 WL 4365709 (N.D. Ala. Sep. 21, 2022).

Because Plaintiff's request for injunctive relief can be satisfied only by public officials acting within their official capacities, a favorable judicial decision would not redress Plaintiff's alleged injury. Without redressability, Plaintiff does not have standing, and without standing, this court lacks subject matter jurisdiction. Accordingly, insofar as Plaintiff brings claims against Deputy Commissioner Crook in her individual capacity for injunctive relief, those claims will be dismissed with prejudice.

## V. CONCLUSION

To the extent that Deputy Commissioner Crook seeks dismissal of all claims against her based on Plaintiff's failure to exhaust administrative remedies, it is

ORDERED that the motion to dismiss (Doc. # 41) is DENIED.

Otherwise, it is ORDERED that Deputy Commissioner Crook's motion to dismiss (Doc. # 41) is GRANTED as follows:

(1)    Plaintiff's 42 U.S.C. § 1983 claims against Deputy Commissioner Crook in her official capacity for monetary damages are DISMISSED with prejudice;

(2)    Plaintiff's 42 U.S.C. § 1983 claims against Deputy Commissioner Crook in her individual capacity for monetary damages are DISMISSED with prejudice;

(3)    Plaintiff's 42 U.S.C. § 1983 claims against Deputy Commissioner Crook in her official capacity for injunctive relief are DISMISSED without prejudice; and

(4)    Plaintiff's 42 U.S.C. § 1983 claims against Deputy Commissioner Crook in her individual capacity for injunctive relief are DISMISSED with prejudice.

It is further ORDERED that the Clerk of Court is DIRECTED to terminate Deborah Crook as a party to this action.

DONE this 17th day of February, 2026.

                                    /s/ W. Keith Watkins
                          UNITED STATES DISTRICT JUDGE